# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

TOM DiMATTEO, Individually and On Behalf
of All Others Similarly Situated,

        Plaintiff,

   -against-

LG.PHILIPS LCD CO., LTD., LG.PHILIPS LCD
AMERICA, INC., SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC., NEC CORP., NEC DISPLAY
SOLUTIONS OF AMERICA, INC., NEC LCD
TECHNOLOGIES, LTD., NEC ELECTRONICS
AMERICA, INC., SHARP CORP., SHARP
ELECTRONICS CORP., AU OPTRONICS CORP.,
AU OPTRONICS CORPORATION AMERICA,
CHI MEI OPTOELECTRONICS CORP., CHI MEI
OPTOELECTRONICS USA, INC., INTER-
NATIONAL DISPLAY TECHNOLOGY CO., INC.)
INTERNATIONAL DISPLAY TECHNOLOGY
USA INC., HITACHI, LTD., HITACHI AMERICA,
LTD., HITACHI ELECTRONIC DEVICES (USA),
INC.,HITACHI DISPLAYS, LTD., TOSHIBA
CORP., TOSHIBA MATSUSHITA DISPLAY
TECHNOLOGY CO., LTD., CHUNGHWA
PICTURE TUBES, LTD., HANNSTAR DISPLAY
CORP., IDT INTERNATIONAL, LTD., OREGON
SCIENTIFIC, INC., SANYO-EPSON IMAGING
DEVICES CORP., and JOHN DOES 1-100
inclusive,

        Defendants.

Case No.: 06 CV 15342

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**



RECEIVED
DEC 20 2006
U.S.D.C. S.D. N.Y.
CASHIERS

## CLASS ACTION COMPLAINT

Plaintiff, by and through his undersigned attorneys, brings this civil action for damages and injunctive relief, and demands trial by jury, on behalf of himself and all others similarly situated in the various states of the United States named herein ("Class Jurisdictions").  Plaintiff, upon personal knowledge as to his own acts and status, and upon information and belief as to all other matters, alleges the following:

## I.  INTRODUCTION

1.    Plaintiff Tom DiMatteo brings this class action against defendants LG.Philips LCD Co., Ltd., LG.Philips LCD America, Inc., Samsung Electronics Co. Ltd., Samsung Electronics America, Inc., NEC Corp., NEC Display Solutions of America, Inc., NEC LCD Technologies, Ltd., NEC Electronics America, Inc., Sharp Corp., Sharp Electronics Corp., AU Optronics Corp., AU Optronics Corporation America, Chi Mei Optoelectronics Corp., Chi Mei Optoelectronics USA Inc., International Display Technology Co. Ltd., International Display Technology USA Inc., Hitachi Ltd., Hitachi America Ltd., Hitachi Electronic Devices (USA), Inc., Hitachi Displays, Ltd., Toshiba Corp., Toshiba Matsushita Display Technology Co., Ltd., Chunghwa Picture Tubes Ltd., Hannstar Display Corp., IDT International Ltd., Oregon Scientific, Inc., and Sanyo Epson Imaging Devices Corp. (collectively "defendants") pursuant to the antitrust laws and consumer protection statutes of the following Class Jurisdictions:

| | |
|---|---|
| Alaska | Alaska Stat. §§ 45.50.471, *et seq.* |
| Arizona | Ariz. Rev. Stat. §§ 44-1401 *et seq.* |
| Arkansas | Ark. Stat. Ann. §§ 4-75-201 *et seq.* and 4-88-101 *et seq.* |
| California | Cal. Bus. & Prof. Code §§ 16700 *et seq.* and 17200 *et seq.* |

| | |
|---|---|
| District of Columbia | D.C. Code §§ 28-4501 *et seq.* and 28-3901 *et seq.* |
| Florida | Fla. Stat. §§ 501.201 *et seq.* |
| Georgia | Ga. Code Ann. §§ 10-1-390 *et seq.* |
| Hawaii | Haw. Rev. Stat. §§ 480-1 *et seq.* |
| Idaho | Idaho Code §§ 48-601 *et seq.* |
| Iowa | Iowa Rev. Stat. §§ 553.1 *et seq.* |
| Kansas | Kan. Stat. Ann. §§ 50-101, *et seq.*, 50-623 *et seq.*, and 50-626(b) |
| Louisiana | La. Rev. Stat. §§ 51:1401 *et seq.* |
| Maine | 10 M.R.S.A. §§ 1101 *et seq.*<br>5 M.R.S.A. §§ 205-A *et seq.* and 207 |
| Massachusetts | Mass. Gen. Laws ch. 93A §§ 1 *et seq.* |
| Michigan | Mich. Comp. Laws Ann. §§ 445.772 *et seq.* |
| Minnesota | Minn. Stat. §§ 325D.49 *et seq.* |
| Mississippi | Miss. Code Ann. §§ 75-21-1 *et seq.* |
| Montana | Mont. Code Ann. §§ 30-14-101 *et seq.* and 30-14-201 *et seq.* |
| Nebraska | Neb. Rev. Stat. §§ 59-801 *et seq* and 59-1601 *et seq.* |
| Nevada | Nev. Rev. Stat. §§ 598A *et seq.* and 598.0903 *et seq.* |
| New Hampshire | N.H. Rev. Stat. §§ 358-A:1 *et seq.* |
| New Mexico | N.M. Stat. Ann. §§ 57-1-1 *et seq.* and 57-12-3 *et seq.* |
| New York | N.Y. Gen. Bus. Law §§ 340 *et seq.* and 349 *et seq.* |
| North Carolina | N.C. Gen. Stat. §§ 75-1 *et seq.* |

| | |
|---|---|
| North Dakota | N.D. Cent. Code §§ 51-08.1-01 and 51-15-02 |
| Puerto Rico | 10 LPRA §§ 257 *et seq.*<br>32 LPRA §§ 5141 |
| Rhode Island | R.I. Gen. Laws §§ 6-13.1-1 *et seq.* |
| South Dakota | S.D. Cod. Laws Ann. §§ 37-1 *et seq.* |
| Tennessee | Tenn. Code Ann. §§ 47-25-101 *et seq.*, 47-25-106 *et seq.* and 47-18-104 |
| Utah | Utah Code Ann. §§ 13-11-1 *et seq.*, 76-10-919 *et seq.* and 76-10-926 *et seq.* |
| Vermont | Vt. Stat. Ann. Tit. 9 §§ 2451-2480 |
| West Virginia | W. Va. Code §§ 47-18-1 *et seq.*, 46A-6-101 *et seq.* and 47-11A-1 *et seq.* |
| Wisconsin | Wis. Stat. §§ 100.20 and 133.01 *et seq.* |

2.      This case arises out of a conspiracy among all defendants and their coconspirators with the purpose and effect of fixing prices on thin film transitor liquid crystal displays ("TFT-LCDs") to be exported to the United States and worldwide, and committing other unlawful and deceptive practices designed to inflate the prices of TFT-LCDs sold to plaintiff and other purchasers in the United States and elsewhere.

3.      Defendants have established an illegal cartel that is ongoing today and that has deliberately targeted and severely burdened consumers in the United States. The cartel and illegal conspiracy has existed since at least 2002. The cartel has affected hundreds of millions of dollars of commerce in TFT-LCD products sold in the United States. The conspiracy has included communications and meetings in which defendants have agreed to limit competition, control supply and fix prices.

## II. JURISDICTION AND VENUE

4.      This Court has jurisdiction over plaintiff's Complaint pursuant to 28 U.S.C. §

1332(d), in that this is a class action in which the matter or controversy exceeds the sum of

$5,000,000, exclusive of interest and costs, and in which some members of the proposed class

are citizens of a state different from the defendants.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because

defendants are subject to personal jurisdiction in this District and because a substantial part of the

events or omissions giving rise to the claims occurred in this District.

6.      This action is commenced on behalf of indirect purchasers of defendants' TFT-

LCD products in the Class Jurisdictions.

7.      Without limiting the generality of the foregoing, defendants (directly or through

agents who were at the time acting with actual and/or apparent authority and within the scope of

such authority) have:

    (a)     transacted business in each of the Class Jurisdictions;

    (b)     contracted to supply or obtain services or goods in each of the Class
            Jurisdictions;

    (c)     intentionally availed themselves of the benefits of doing business in each
            of the Class Jurisdictions;

    (d)     produced, promoted, sold, marketed or distributed their products or
            services in each of the Class Jurisdictions and, thereby have purposefully
            profited from their access to the markets in each of the Class Jurisdictions;

    (e)     caused tortious damage by act or omission in each of the Class
            Jurisdictions;

    (f)     cause tortious damage in each of the Class Jurisdictions by acts or
            omissions committed outside such jurisdiction while (i) regularly doing or

5

soliciting business in such jurisdictions, and/or (ii) engaging in other persistent courses of conduct within such jurisdictions and/or (iii) deriving substantial revenue from goods used or consumed or services rendered in such jurisdictions;

(g)    committed acts and omissions which defendants knew or should have known would cause damage (and, in fact, did cause damage) in each of the Class Jurisdictions to Plaintiff and members of the Class while (i) regularly doing or soliciting business in such jurisdictions, and/or (ii) engaging in other persistent courses of conduct within such jurisdictions and/or (iii) deriving substantial revenue from goods used or consumed or services rendered in such jurisdictions; or

(h)    otherwise had the requisite minimum contact with each of the Class Jurisdictions, such that, under the circumstances, it is fair and reasonable to require defendants to come to this Court to defend this action.

### III. PARTIES

**PLAINTIFF**

8.    Plaintiff Tom DiMatteo is a resident of New York, New York. He indirectly purchased a TFT-LCD product that was manufactured, distributed and/or sold by one or more defendants from 2002 to the present, and was injured by the anticompetitive conduct alleged in this Complaint.

**DEFENDANTS**

9.    Defendant LG.Philips LCD Co., Ltd. ("LG.Philips") is a Korean corporation with its principal executive offices in Seoul, Korea. LG.Philips is a leading manufacturer and supplier of the thin film transitor liquid crystal display ("TFT-LCD") panels and is one of the world's leaders in this industry. It produces TFT-LCD panels for television, monitors, computer notebooks, mobile phones and various other applications that require a screen display.

6

10.     Defendant LG.Philips LCD America, Inc., a subsidiary of LG.Philips, has its place of business at 150 East Brokaw Road, San Jose, California 95112.

11.     Defendant Samsung Electronics Co., Ltd. ("Samsung") is a Korean corporation based in Seoul, Korea. Samsung is a global giant in the industries of electronics and digital technology. Samsung also manufactures and supplies TFT-LCD panels for various applications in the United States and throughout the world.

12.     Defendant Samsung Electronics America, Inc. is a wholly-owned subsidiary of Samsung. It directs business in the United States as Samsung Electronics America, Inc. at 105 Challenger Road, Ridgefield Park, New Jersey 07660.

13.     Defendant NEC Corp. ("NEC") is a Japanese corporation with headquarters in Tokyo, Japan. NEC is a leading provider of advanced IT services and network technology to businesses, communications services providers, and government entities. NEC develops and produces a range of TFT-LCD for use in industrial and medical equipment displays, personal computer monitors, and mobile phones.

14.     Defendant NEC Display Solutions of America, Inc., a wholly-owned subsidiary of NEC, produces and markets LCD products and technologies. Its principal place of business is at 500 Park Boulevard, Suite 1100, Itasca, Illinois 60143.

15.     Defendant NEC LCD Technologies, Ltd. ("NEC LCD"), based in Kanagawa, Japan, focuses on research, development, design, manufacture, sale, and maintenance of color and monochrome active matrix (AM) LCD modules for corporate customers. AM-LCD modules include TFT-LCD technologies.

7

16.     Defendant NEC Electronics America, Inc. is a wholly-owned subsidiary of NEC Electronics Corp., which is an independent entity from NEC Corp. but also based in Tokyo, Japan. The main business for NEC Electronics America is the development, manufacturing, and sale of semiconductors. Additionally, it also serves as the sales and marketing channel in the Americas for industrial active-matrix (AM) LCD module from NEC LCD Technologies.

17.     Defendant Sharp Corp. ("Sharp") is a Japanese corporation based in Osaka, Japan. Its business activities include manufacturing and producing electronic products for consumer and office use. Sharp is one of the leading producers of LCD televisions in the world. Its line of products also incorporate the use of TFT-LCD panels.

18.     Defendant Sharp Electronics Corp. is the U.S. sales and marketing subsidiary of Sharp in Japan. Its principal place of business is at Sharp Plaza, Mahwah, New Jersey 07430.

19.     Defendant AU Optronics Corp. ("AUO") is a corporation with headquarters in Hsinchu, Taiwan. The company was first incorporated as Acer Display Technology, Inc. in 1996, but merged with Unipac in 2001 to become AUO. Its main line of business is in developing and manufacturing a wide range of TFT-LCD panels used in computer products, consumer electronics products, and television sets.

20.     Defendant AU Optronics Corporation America is a wholly-owned subsidiary of AOU in the United States. Its principal place of business is at 9720 Cypresswood Drive, Suite 241, Houston, TX 77070.

21.     Defendant Chi Mei Optoelectronics Corp. ("CMO") is a Taiwanese corporation headquartered at Tainan Science-based Industrial Park, Taiwan. CMO is one of the world's

leading TFT-LCD company. Its key products are large-size TFT-LCDs for notebook, desktop monitor, and TV applications.

22.    Defendant Chi Mei Optoelectronics USA, Inc. is a subsidiary of CMO in the United States, doing business at 101 Metro Drive Suite 510, San Jose, California 95110.

23.    Defendant International Display Technology Co., Ltd. ("IDTech") is a joint company created by Taiwan's Chi Mei Optoelectronics Corporation (85%) and Japan's IBM Corp. (15%). IDTech, headquartered in Japan, develops and manufactures large-screen, high-resolution TFT-LCD products.

24.    Defendant International Display Technology USA Inc. ("IDTech USA") is a wholly owned and controlled subsidiary of CMO in the United States, doing business at 101 Metro Drive, Suite 510, San Jose, California 95110.

25.    Defendant Hitachi, Ltd. ("Hitachi") is a Japanese corporation based in Tokyo, Japan.  It is one of Japan's biggest diversified manufacturer of electronics and electrical products. The company offers a wide range of systems, products and services in market sectors, including information systems, electronic devices, power and industrial systems, consumer products, materials and financial services.

26.    Defendant Hitachi America, Ltd. is a wholly-owned subsidiary of Hitachi that markets and manufactures a broad range of electronics, computer systems and products, consumer electronics and semiconductors.  It also provides industrial equipment and services throughout North America.  It is located at 50 Prospect Ave., Tarrytown, New York 01591.

27.    Defendant Hitachi Electronic Devices (USA), Inc. is a subsidiary of Hitachi in the

United States that distributes LCDs across North and South America. It conducts business at 575 Mauldin Road, Greenville, South Carolina 29607.

28.     Defendant Hitachi Displays Ltd. is a fully owned subsidiary of Hitachi that facilitates the development, manufacturing and sales of display device. It manufactures a broad range of LCD, including TFT-LCD, products for equipment manufacturers. Its main office is in Berkshire, United Kingdom.

29.     Defendant Toshiba Corp. ("Toshiba"), headquartered in Tokyo, Japan, is a developer and manufacturer of high technology, including advanced electronic and electrical products, that penetrates information and communications equipment and systems, Internet-based solutions and services, electronic components and materials, power systems, industrial and social infrastructure systems, and household appliances. Its LCD business is embedded within its product segment of electrical devices.

30.     Defendant Toshiba Matsushita Display Technology Co., Ltd. ("TMDisplay") is a Tokyo-based joint venture company of Toshiba and Matsushita Electric Industrial Co., Ltd. that focuses on the LCD business. TMDisplay is one of the leading manufacturers of TFT-LCD products, specifically in the mobile arena.

31.     Defendant Chunghwa Picture Tubes Ltd. ("CPT"), a Taiwanese corporation, is a global manufacturer of display technologies. CPT has two main lines of products: TFT-LCD and cathode ray tube (CRT) technologies.

32.     Defendant Hannstar Display Corp. ("Hannstar") is a Taiwanese corporation that specializes in the manufacturing of TFT-LCD products for notebook computer displays and

desktop computer monitors. Their customers include leading electronics companies in Taiwan and overseas.

33.     Defendant IDT International Ltd. ("IDT") is a Hong Kong-based company that develops, manufactures and distributes consumer electronic products–including LCD, telecommunications, digital media and electronic learning products. One of the company's most recognizable brand is "Oregon Scientific."

34.     Defendant Oregon Scientific, Inc. is the U.S. branch of Oregon Scientific Global Distribution, Ltd. and a wholly-owned subsidiary of IDT. It conducts marketing and distribution for IDT. The U.S. office is located at 19861 SW 95th Avenue, Tualatin, Oregon 97062.

35.     Defendant Sanyo Epson Imaging Devices Corp. ("Sanyo-Epson"), is a Japan-based joint venture of Seiko Epson Corp. and Sanyo Electric Co., Ltd.. It is in the business of development, production and sales of STN LCDs, MD-TFD LCDs, Amorphous Silicon TFT LCDs and Low-Temperature Polysilicon TFTs.

36.     Each of these defendants, directly and through affiliates that they dominate and control in this country and outside the United States, is engaged in the business of manufacturing and selling TFT-LCDs in the United States and throughout the world.

37.     Each of these defendants, directly and through affiliates that they dominate and control in this country and outside the United States, has colluded to control output and set artificial prices for TFT-LCDs pursuant to illegal horizontal agreements. These horizontal practices were designed to, and in fact did, have a substantial and adverse impact in the United States.

38.     The acts charged in this Complaint, as having been committed by defendants,

11

were authorized, ordered, or done by their officers, agents, employees, or representatives, while

actively engaged in the management of defendants' business or affairs, and continue to the

present day.

## IV.  CLASS ACTION ALLEGATIONS

39.    Plaintiff brings this action on behalf of himself and as a class action under the

provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of all members of the

following class:

> All persons or entities in a Class Jurisdiction who indirectly purchased TFT-
> LCDs that was manufactured or distributed by any of defendants from 2002
> to the present.  Excluded from the class are all governmental entities,
> defendants, their co-conspirators, and their respective subsidiaries and
> affiliates.

40.    Members of the class are numerous and joinder is impracticable.

41.    Plaintiff's claims are typical of the members of the class.  Plaintiff and all

members of the class were damaged by the same wrongful conduct by defendants.

42.    Plaintiff will fairly and adequately protect and represent the interests of the class.

The interests of plaintiff are coincident with, and not antagonistic to, those of the class.

43.    Plaintiff is represented by counsel experienced and competent in the prosecution

of complex class action and antitrust litigation.

44.    Questions of law and fact common to the members of the class predominate over

questions, if any, that may affect only individual members because defendants have acted on

grounds generally applicable to each of the entire class.  Such generally applicable conduct is

inherent in defendants' collusion.

45.    Questions of law and fact common to the class include:

(a)    whether defendants combined, agreed, and conspired among themselves to fix, maintain, or stabilize prices of and control exports for TFT-LCD;

(b)    the existence and duration of the horizontal agreements alleged in this Complaint to fix, maintain, or stabilize prices of, and control exports for, TFT-LCD;

(c)    whether each defendant was a member of, or participant in, the combination and/or conspiracy alleged in this Complaint;

(d)    whether and to what extent the conduct of defendants caused injury to the business or property of plaintiff and the class; and, if so, the appropriate measure of damages;

(e)    whether defendants' agents, officers or employees participated in telephone calls and meetings in furtherance of the conspiracy alleged herein; and

(f)    whether plaintiff and members of the class are entitled to declaratory and/or injunctive relief.

46.    Class action treatment is the superior (if not the only) method for the fair and efficient adjudication of this controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that it might not be practicable to pursue individually, substantially outweigh the difficulties, if any, that may arise in management of this class action.

## V.  TRADE AND COMMERCE

47.    During the period of this Complaint, the conduct of defendants has taken place in and/or affected the interstate and foreign trade and commerce of the United States.

13

48.    The conduct of defendants has directly, substantially and foreseeably restrained such trade and commerce.

## VI.  FACTUAL BACKGROUND

49.    LCD, or liquid crystal display, is a thin, flat display device that is used in televisions, laptop computers, mobile phones, microwaves and numerous other electronic and industrial applications.  Thin film transitor LCD, or TFT-LCD, is a variant of LCD that uses advanced transitor technology to improve the image quality of the LCD.

50.    The TFT-LCD industry has high barriers to entry due to the capital intensive nature of the display industry and the high volumes of production required to achieve economies of scale.  The small number of TFT-LCD manufacturers is concentrated in Asia–specifically Korea, Japan, China and Taiwan.

51.    The manufacture of TFT-LCD is a multi-billion dollar a year industry worldwide.  The United States market for TFT-LCD potentially exceeds $1 billion per year.  The conspiracy here involving TFT-LCD has affected hundreds of millions of dollars of commerce in products found in the United States.

52.    Defendants are manufacturers of TFT-LCDs for bulk sales to end-brand customers or merchants who will incorporate the LCDs into their products before selling the various products under their own brands.  For example, LG.Philips's biggest end-brand customers include many of the world's leading computer and television manufacturers such as Dell, Hewlett-Packard, Apple, Toshiba, LG Electronics, and Philips Electronics.

53.    The global market for TFT-LCD is over $50 billion in 2005.  Unit sales across the TFT-LCD industry increased from 70 million units in 1999 to 941 million units in 2005,

accounting for a market revenue growth of $14 billion to $61 billion respectively in the same period.

54.     During the period of 2002 until the present in this Complaint, the international market for TFT-LCD was dominated by the defendants.

55.     In December 2006, competition authorities from various countries, including the United States Department of Justice and the European Commission, began investigating price collusion and other anticompetitive behavior in the TFT-LCD market.

56.     The European Commission has stated that "The purpose of this investigation is to ascertain whether there is evidence of a cartel agreement and related practices concerning price fixing for [TFT-LCD] products which could be an infringement of E.C. Treaty rules on restrictive business practices and cartels."

57.     On Friday, December 8, 2006, the Korean Fair Trade Commission visited the offices of LG Philips LCD in Seoul, Korea.  LG Philips also subsequently announced that officials from the Korean Fair Trade Commission and the Japanese Fair Trade Commission had visited LG Philips' offices in Seoul and Tokyo, respectively, in connection with "possible anticompetitive conduct." The Korean Trade Commission also probed Samsung companies as part of international efforts investigating anticompetitive practices in the LCD industry.  The Japanese Fair Trade Commission is also investigating LG companies, as well as Japan-based NEC Corp. and Sharp Corp.

58.     There is also evidence that Defendants colluded to artificially restrict supply of TFT-LCD products.  A "Crystal Cycle" is an industry term that refers to shortages in the supply-and-demand cycle for LCD displays.  A recent *Infoworld* article cited an industry analyst, Chris

Connery of DisplaySearch, as saying that, "the talk in the industry is that the manufacturers are looking to create an artificial Crystal Cycle." Further, at a recent conference in Taiwan, a leading producer of LCD glass stated publicly that the industry should collectively look at cutting back on production from 100 percent to at least 85 percent. Otherwise, if supply outpaces demand, manufacturers will be forced to cut prices. A subsequent *Infoworld* article noted that the unnamed Taiwanese executive came from defendant AUO.

59.     Two other Taiwanese companies, AU Optoelectronics Corp. and Chi Mei Optoelectronics Corp., are also under investigation.

60.     Samsung has been at the epicenter of other price fixing investigations. Beginning in November 2006, Samsung acknowledged European regulators had raided it over alleged price-fixing of static random access memory products. And executives from Samsung Semiconductor, Inc., along with executives from other companies, have pled guilty to felony charges of price fixing in the market for dynamic random access memory.

61.     The international competition authorities investigations into the LCD market stem directly from the prior investigations mentioned above.

62.     Upon information and belief, defendants formed a cartel in 2002 in order to reduce the rate of decline of prices for TFT-LCDs.

63.     Upon information and belief, the cartel implemented was designed to reduce production of TFT-LCDs, to stabilize or fix prices, and to allocate markets.

64.     Upon information and belief, during the period of the charged combination and conspiracy, defendants have participated in meetings and conversations in Asia and elsewhere in which the prices, volumes of production, sales and exports to the United States, and market for

TFT-LCDs were discussed and agreed upon. These meetings have also been coordinated with trade association meetings for associations in which defendants are members.

    65.    Upon information and belief, at the meetings described above, and during the period of the conspiracy, defendants and others agreed to and did eliminate, suppress, and limit competition, including by:

    (a)    discussing the production volumes and prices of TFT-LCDs in the United States and elsewhere;

    (b)    agreeing to control the supply of TFT-LCDs in the United States and elsewhere;

    (c)    agreeing to increase and maintain prices of TFT-LCDs in the United States and elsewhere;

    (d)    agreeing to control the worldwide market for TFT-LCDs.

    66.    Despite some price decreases during this period, the collusive arrangements of the cartel have continued to maintain prices well above those of a competitive market.

    67.    The cartel established by defendants continues its illegal conduct today.

### VII. IMPACT ON RELEVANT MARKETS

    68.    During the conspiracy, prices of TFT-LCD have not followed the laws of supply and demand existing in a competitive market.

    69.    Due to defendants' price fixing and market allocation activity, price increases have taken place in TFT-LCDs despite reductions in the cost of production.

### VIII. BENEFIT TO DEFENDANTS

    70.    Each defendant has substantially benefitted from its participation in this illegal price-fixing conspiracy.

## IX.  INJURY TO PLAINTIFF

71.    Defendants' combination and conspiracy has had the following effects, among

others:

(a)    The price of TFT-LCD products purchased by plaintiff and the class has been fixed, raised, maintained and stabilized at artificial and non-competitive levels; and

(b)    Competition in the sale of TFT-LCD has been restrained.

72.    During the period covered by this Complaint, plaintiff has purchased TFT-LCD

from purchasers of TFT-LCD manufactured by defendants, and thus require injunctive relief.  By

reason of the alleged violations of the antitrust and consumer protection laws, plaintiff paid more

for TFT-LCD than he would have paid in the absence of the illegal combination and conspiracy,

and as a result he has been injured and has suffered damages in an amount presently

undetermined.

## X.  VIOLATIONS ALLEGED

73.    Each preceding paragraph is incorporated herein as if set forth in whole.

74.    Beginning at least as early as 2002, and continuing until the present, the exact

dates being unknown to plaintiff, defendants engaged in a continuing agreement, understanding

and conspiracy in restraint of trade to artificially raise, fix, maintain or stabilize prices of, and to

control and restrict output of, TFT-LCD panels in the United States in violation of Alaska Stat.

§§ 45.50.471, *et seq.*, Ariz. Rev. Stat. §§ 44-1401 *et seq.*, Ark. Stat. Ann. §§ 4-75-201 *et seq.* and

4-88-101 *et seq.*, Cal. Bus. & Prof. Code §§ 16700 *et seq.* and 17200 *et seq.*, D.C. Code §§ 28-

4501 *et seq.* and 28-3901 *et seq.*, Fla. Stat. §§ 501.201 *et seq.*, Ga. Code Ann. §§ 10-1-390 *et*

*seq.*, Haw. Rev. Stat. §§ 480-1 *et seq.*, Idaho Code §§ 48-601 *et seq.*, Iowa Rev. Stat. §§ 553.1 *et*

18

*seq.*, Kan. Stat. Ann. §§ 50-101, *et seq.*, 50-623 *et seq.*, and 50-626(b), La. Rev. Stat. §§ 51:1401

*et seq.*, 10 M.R.S.A. §§ 1101 *et seq.*, 5 M.R.S.A. §§ 205-A *et seq.* and 207, Mass. Gen. Laws ch.

93A §§ 1 *et seq.*, Mich. Comp. Laws Ann. §§ 445.772 *et seq.*,  Minn. Stat. §§ 325D.49 *et seq.*,

Miss. Code Ann. §§ 75-21-1 *et seq.*, Mont. Code Ann. §§ 30-14-101 *et seq.* and 30-14-201 *et*

*seq.*, Neb. Rev. Stat. §§ 59-801 *et seq* and 59-1601 *et seq.*, Nev. Rev. Stat. §§ 598A *et seq.* and

598.0903 *et seq.*, N.H. Rev. Stat. §§ 358-A:1 *et seq.*, N.M. Stat. Ann. §§ 57-1-1 *et seq.* 57-12-3,

N.Y. Gen. Bus. Law §§ 340 *et seq.* and 349 *et seq.*, N.C. Gen. Stat. §§ 75-1 *et seq.*, N.D. Cent.

Code §§ 51-08.1-01 and 51-15-02, 10 LPRA §§ 257 *et seq.*, 32 LPRA §§ 5141, R.I. Gen. Laws

§§ 6-13.1-1 *et seq.*, S.D. Cod. Laws Ann. §§ 37-1 *et seq.*, Tenn. Code Ann. §§ 47-25-101 *et seq.*,

47-25-106 *et seq.* and 47-18-104, Utah Code Ann. §§ 13-11-1 *et seq.*, 76-10-919 *et seq.* and 76-

10-926 *et seq.*, Vt. Stat. Ann. Tit. 9 §§ 2451-2480, W. Va. Code §§ 47-18-1 *et seq.*, 46A-6-101 *et*

*seq.* and 47-11A-1 *et seq.*, and Wis. Stat. §§ 100.20 and 133.01 *et seq.*.

75.    The contract, combination and conspiracy consisted of a continuing agreement,

understanding and concert of action among the defendants, the substantial terms of which were to

fix, raise and maintain, or stabilize prices for, and to control and restrict output for, TFT-LCD

panels in the United States.

76.    In formulating and effectuating the contract, combination or conspiracy,

defendants did those things that they combined and conspired to do, including, among other

things:

      (a)    agreeing to charge prices at certain levels and otherwise to fix, increase, maintain and/or stabilize prices of TFT-LCD panels sold in the United States;

      (b)    exchanging information on prices and sales volumes of TFT-LCD panels sold;

(c)    agreeing on the reduction of production capacity;

(d)    monitoring and implementing of the arrangements among cartel members; and

(e)    selling TFT-LCD panels at the agreed-upon prices.

77.    The activities described above have been engaged in by defendants for the purpose of effectuating the unlawful arrangements to fix, maintain, raise and/or stabilize prices of TFT-LCD panels.

## XI. UNJUST ENRICHMENT

78.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

79.    Defendants have been unjustly enriched through overpayment by plaintiff and the class and the resulting profits.

80.    Under common law principles of unjust enrichment, defendants should not be permitted to retain the benefits conferred via overpayments by plaintiff and the class.

81.    Plaintiff and the class are entitled to a constructive trust from such overpayments resulting from defendants' unlawful, unjust, unfair and inequitable conduct.  Plaintiff and the class may make claims on a *pro rata* basis for restitution.

## XII.  THE NEED FOR INJUNCTIVE RELIEF

82.    It is in the public interest to enjoin defendants from continuing to operate a conspiracy and combine to fix the prices of TFT-LCDs.

83.    Plaintiff and the class will continue to be injured by defendants' ongoing conduct in violation of the antitrust laws of the United States in the absence of injunctive relief.

## XIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

84.    That the Court determine that this action may be maintained as a class action pursuant to Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to all members of the class;

85.    That the unlawful combination and conspiracy alleged herein be adjudged and decreed to be a deceptive trade practice and/or an unreasonable restraint of trade or commerce in violation of Alaska Stat. §§ 45.50.471, *et seq.*, Ariz. Rev. Stat. §§ 44-1401 *et seq.*, Ark. Stat. Ann. §§ 4-75-201 *et seq.* and 4-88-101 *et seq.*, Cai. Bus. & Prof. Code §§ 16700 *et seq.* and 17200 *et seq.*, D.C. Code §§ 28-4501 *et seq.* and 28-3901 *et seq.*, Fla. Stat. §§ 501.201 *et seq.*, Ga. Code Ann. §§ 10-1-390 *et seq.*, Haw. Rev. Stat. §§ 480-1 *et seq.*, Idaho Code §§ 48-601 *et seq.*, Iowa Rev. Stat. §§ 553.1 *et seq.*, Kan. Stat. Ann. §§ 50-101, *et seq.*, 50-623 *et seq.*, and 50-626(b), La. Rev. Stat. §§ 51:1401 *et seq.*, 10 M.R.S.A. §§ 1101 *et seq.*, 5 M.R.S.A. §§ 205-A *et seq.* and 207, Mass. Gen. Laws ch. 93A §§ 1 *et seq.*, Mich. Comp. Laws Ann. §§ 445.772 *et seq.*, Minn. Stat. §§ 325D.49 *et seq.*, Miss. Code Ann. §§ 75-21-1 *et seq.*, Mont. Code Ann. §§ 30-14-101 *et seq.* and 30-14-201 *et seq.*, Neb. Rev. Stat. §§ 59-801 *et seq* and 59-1601 *et seq.*, Nev. Rev. Stat. §§ 598A *et seq.* and 598.0903 *et seq.*, N.H. Rev. Stat. §§ 358-A:1 *et seq.*, N.M. Stat. Ann. §§ 57-1-1 *et seq.* and 57-12-3, N.Y. Gen. Bus. Law §§ 340 *et seq.* and 349 *et seq.*, N.C. Gen. Stat. §§ 75-1 *et seq.*, N.D. Cent. Code §§ 51-08.1-01 and 51-15-02, 10 LPRA §§ 257 *et seq.*, 32 LPRA §§ 5141, R.I. Gen. Laws §§ 6-13.1-1 *et seq.*, S.D. Cod. Laws Ann. §§ 37-1 *et seq.*, Tenn. Code Ann. §§ 47-25-101 *et seq.*, 47-25-106 *et seq.* and 47-18-104, Utah Code Ann.

21

§§ 13-11-1 *et seq.*, 76-10-919 *et seq.* and 76-10-926 *et seq.*, Vt. Stat. Ann. Tit. 9 §§ 2451-2480,

W. Va. Code §§ 47-18-1 *et seq.*, 46A-6-101 *et seq.* and 47-11A-1 *et seq.*, and Wis. Stat. §§

100.20 and 133.01 *et seq.*, granting standing to indirect purchasers for antitrust injuries, and that

the Court award plaintiff and the Class (i) actual damages in an amount to be proved at trial as a

result of the wrongful conduct alleged, plus interest and costs; (ii) treble damages, where

appropriate, under the indirect purchaser laws of the Class Jurisdictions; and (iii) all other

damages available under the laws of the Class Jurisdictions;

86.    That defendants be enjoined from continuing the currently ongoing unlawful

combination and conspiracy alleged herein and other appropriate injunctive relief;

87.    That plaintiff be awarded restitution as a result of defendants' acts of unjust

enrichment;

88.    That plaintiff and the class recover their costs of this suit, including reasonable

attorneys' fees, as provided by law; and

89.    That plaintiff and the class be granted such other, further and different relief as the

nature of the case may require or as may be deemed just and proper by this Court.

**JURY DEMAND**

Plaintiff demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil

Procedure, of all issues triable of right by a jury.

Dated: December 20, 2006                    By: _____

Daniel Hume (DH 1358)
David Kovel (DK 4760)
Beverly Tse (BT 1651)
KIRBY McINERNEY & SQUIRE LLP

22

830 Third Avenue, 10th Floor
New York, New York 10022
Telephone: (212) 371-6600
Facsimile: (212) 751-2540

*Attorneys for Plaintiff And All Others
Similarly Situated*